IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| KATHARINE CLAFLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-5023-CV-SW-ODS |
| | ) |
| LARRY MITCHELL SHAW and | ) |
| BARTON COUNTY, MISSOURI, | ) |
| | ) |
| Defendants. | ) |

<u>ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pending is Defendant Larry Mitchell Shaw's Motion for Summary Judgment.[1] The motion (Doc. # 71) is granted in part and denied in part.

## I. BACKGROUND

This is Defendants' Motion for Summary Judgment. Accordingly, the facts will be construed in Plaintiff's favor and factual disputes will be resolved in Plaintiff's favor. In his Reply Brief Defendant criticizes Plaintiff for "ignor[ing] the avalanche of facts" against her and relying "on a few lines in Defendant's deposition." Defendant's Reply Suggestions at 3-4. However, Defendant's criticism does not alter the requirement that factual disputes be resolved in Plaintiff's favor. The Court cannot and will not weigh the facts: that is the jury's job.

Plaintiff was an employee of Barton County, Missouri and worked as a dispatcher for the Barton County Sherriff's office. Defendant's SOF 1, 3. Defendant Larry Shaw was the Barton County Sheriff and he faced an opponent (Jeremy Brand) in the 2012 primary. Defendant's SOF 6. Brand had formerly been a deputy with the Barton County Sheriff's office; Defendant previously terminated him. Defendant's Dep. at 71.

---

[1] The other Defendant, Barton County, Missouri, was dismissed at Plaintiff's request on November 20, 2013.

Defendant knew Plaintiff (and another employee, Deputy Ashworth) were supporting Brand in the election.  Plaintiff told at least two people in the office that she was supporting Brand.  Plaintiff's Dep. at 42-43; Luce Dep. at 19-20; Heiskell Dep. at 24-26, 44-45.  Several people had also told Defendant of Plaintiff's support for Brand.  Defendant was concerned this evidenced a lack of loyalty from Plaintiff and Deputy Ashworth.  Defendant's Dep. at 68-73.  This lack of loyalty was one of the reasons he decided to fire them; in fact, Defendant described this as the "primary" reason for terminating the pair, and he terminated them on November 7, 2012.  Defendant's Dep. at 68-73, 101, 165-67.

Plaintiff's opposition to Defendant did not interfere with her ability to do her job.  Luce Dep. at 20-21.  Defendant presents testimony from people who describe Plaintiff as "disruptive," but all of that testimony relates to conduct other than her support of Brand.  The Record suggests Plaintiff generally disapproved of Defendant's decisions and policies and she criticized him, but this "disruption" was not connected to Plaintiff's support of Brand.  E.g., Heiskell Dep. at 24, 46-47; Luce Dep. at 9-11.  In fact, it appears to have been a regular, if not daily, occurrence.  Luce Dep. at 37-40.  Nonetheless, Chief Deputy Luce did not discipline her or recommend that Defendant discipline her.  Luce Dep. at 8-12.

In September 2012, the Missouri Highway Patrol ("MHP") was engaged in an investigation of the Barton County Sheriff's Office.  On October 11, 2012, Plaintiff was interviewed by Casey Jadwin (whose title is never disclosed) and Trooper Donald Jones.  Trooper Jones' report and Jadwin's deposition confirm the initial interview in October took place in a parking lot; according to Trooper Jones' report, it was a McDonalds' parking lot.  Trooper Jones came to the Sheriff's Office in November and obtained some records; he also talked to Defendant but according to Trooper Jones' report, Defendant told Trooper Jones to refer all questions to his attorney.   Defendant knew about the investigation, and knew the MHP would be interviewing people in his office, Defendant's Dep. at 59-60, but there is no evidence Defendant knew who was interviewed or what they reported.  Plaintiff disputes this fact, but identifies nothing in the Record that demonstrates Defendant knew that she talked to the MHP, much less what she said.  Plaintiff only points to the fact that she was terminated the day after the

2

MHP investigators came to the office in November 2012 to obtain records, but this fact does not establish Defendant's knowledge.  Plaintiff admits Defendant did not discourage her (or anyone) from talking to the investigating officers.  The Record also establishes that others in the Sheriff's Office talked to the investigators but were not terminated.

Defendant has posited that Plaintiff violated various office rules and policies.  However, construing the Record in Plaintiff's favor demonstrates other employees also violated those rules and policies but were not terminated.  E.g., Heiskell Dep. at 8, 10-13 (describing common usage of computers to check Facebook and use of personal cellphones).  Moreover, there is even a factual dispute as to whether there was a policy forbidding this activity.  E.g., id. at 14 (Heiskell's testimony that Defendant never said "I don't want you to use your Facebook.  He just said, Be mindful, be careful.  Don't let it interfere with anything.").

Defendant has also emphasized certain specified instances of misconduct, but construing the facts in Plaintiff's favor puts them in a different light than the one cast by Defendant.  In September 2012 Plaintiff attended a party during which a false report was called in to the Lamar Police Department.  However, Plaintiff had nothing to do with the false report.  Plaintiff's Dep. at 62-63.  In addition, the person who actually made the call is still a part-time dispatcher with the Barton County Sheriff's Department, Defendant's Dep. at 80-81, which undercuts Defendant's claim regarding the seriousness of this event even if Plaintiff knew about it or was involved.

Another incident Defendant emphasizes occurred in October 2012, when the Sheriff's Office was investigating a murder/suicide/felony assault.  The crime was covered extensively on the news, and on that day Plaintiff received a call from a member of the public asking about the crime.  She returned the phone call and confirmed that the news reports were true but provided no confidential information about the investigation.  Plaintiff's Dep. at 22-25.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The Amended Complaint sets forth three counts: Count I alleges Plaintiff was terminated in violation of her First Amendment rights to (a) support and speak in favor of a political candidate and (b) talk to the MHP about matters of public concern.  Count I is asserted against Sheriff Shaw in his personal and official capacities.  Counts II and III assert state-law claims, and both are based on Plaintiff's claim that she was terminated for providing information to the MHP.  However, Plaintiff states she does not intend to proceed on these claims, so judgment can be entered in Defendant's favor on Counts II and III without further discussion.

Defendant essentially argues (1) the Record establishes he did not terminate Plaintiff for engaging in First Amendment activity, (2) even if he did, the termination was

4

justified based on the Pickering balancing test,[2] and (3) if he is nonetheless liable on these uncontroverted facts, he is protected by qualified immunity. Both of Defendant's arguments rest on the proposition that the facts are uncontroverted – a proposition the Court does not agree with. Nonetheless, because Defendant has asserted his entitlement to qualified immunity with respect to Plaintiff's political activity, the Court is required to first determine whether the facts – construed in Plaintiff's favor – support a finding that a constitutional right was violated. If so, the Court must then determine whether that right was clearly established. E.g., Hinshaw v. Smith, 436 F.3d 997, 1004 (8th Cir. 2006). The Court must conduct this inquiry in a manner that allows for meaningful review by rendering an opinion that is similar to that required by Rule 52(a)(2). Robbins v. Becker, 715 F.3d 691, 964 (8th Cir. 2013).

### A.

To establish a prima facie case of retaliatory termination, the Record construed in Plaintiff's favor must establish (1) her speech or activity was protected by the First Amendment, (2) she was terminated, and (3) the protected activity was a substantial motivating factor in the decision to take the adverse employment action. Rynders v. Williams, 650 F.3d 1188, 1194 (8th Cir. 2011). Plaintiff has satisfied these requirements with respect to her support of Brand. First, her statements of support for a political candidate are unquestionably protected by the First Amendment. E.g., Sorrell v. IMS Health Inc., 131 S. Ct. 2653, 2673-74 (2011); Rutan v. Republican Party of Ill., 497 U.S. 62, 69 (1990). Even her "quiet support" (as Defendant describes it) is entitled to protection. Second, there is no question that Plaintiff was terminated. Finally, there is a factual dispute as to why Plaintiff was terminated; more importantly, a jury might find Plaintiff was terminated because she supported Defendant's opponent. If nothing else, Defendant's own testimony that this was the primary reason he terminated her would provide a sufficient basis for a jury reaching this conclusion. In addition, there is evidence in the Record that might cause a jury to disbelieve Defendant's proffered

---

[2] A reference to the balancing test enunciated in Pickering v. Board of Educ., 391 U.S. 563 (1968).

5

reasons, particularly if the jury finds (as would be permitted by the Record) that (1) other people engaged in the same (or worse) conduct but were not terminated, (2) the Chief Deputy did not discipline, or recommend discipline for, Plaintiff, (3) the reasons proffered justified a much earlier and more contemporaneous termination, and (4) Defendant's accusations of serious misconduct were not true.  The combination of a basis for disbelieving Defendant's now-proffered justifications with Defendant's admission that Plaintiff's support of Brand was the primary reason he terminated her could cause a jury to believe Defendant acted based on Plaintiff's support for Brand.

The next issue is application of the Pickering balancing test.[3]  The test

> weigh[s] the employee's right to engage in the particular speech at issue with such considerations as "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."

Hinshaw, 436 F.3d at 1005 (quoting Rankin v. McPherson, 483 U.S. 378, 3888 (1987)).  This is a legal inquiry, but "fact disputes concerning any of the factors are appropriately submitted to a jury."  Id. at 1004.

There are factual disputes concerning the Pickering factors.  Defendant contends the Record establishes Plaintiff was not shy in sharing her opinions or her criticism of Defendant, and he characterizes this as "disruption."  However, Plaintiff was critical of Defendant (in Defendant's words, "disruptive") long before she said anything about

---

[3]The parties assume the test must be applied, but interestingly Defendant's position might lead to the conclusion that it does not.  Defendant strives mightily to argue that Plaintiff never engaged in speech.  Plaintiff's Suggestions at 19-20.  If this was the case, and if the jury believes Defendant fired Plaintiff merely because she silently supported Brand, then the Pickering test is not necessary.  Cf. Hinshaw, 436 F.3d at 1005-06 (dicta discussing Branti v. Finkel, 445 U.S. 507 (1980) and Elrond v. Burns, 427 U.S. 347 (1976)).  True, Plaintiff was not fired because she supported a political *party* other than the one Defendant belonged to (a true patronage situation) – but the principle is the same.  Cf. Barnes v. Bosley, 745 F.2d 501, 506 n.2 (8th Cir. 1984), cert. denied, 471 U.S. 1017 (1985).  A public employee cannot be fired merely for their political affiliation "unless the hiring authority can demonstrate that party affiliation is an appropriate and reasonable requirement for the effective performance of the public office."  Hinshaw, 436 F.3d at 1005.  However, the Record so clearly establishes that Plaintiff was not merely a silent supporter of Brand's that the Court believes the Pickering test applies.

Brand. There is evidence from which the jury could believe the "level of disruption" was unchanged – meaning disruption in the office occasioned by Plaintiff's support of Brand was not any different from the "ordinary" disruption Plaintiff caused. The question is not whether Plaintiff was disruptive: there is evidence that she was. The question is whether her support of Brand *augmented* the disruption to the point that it was worse than before, and on this point there is a factual dispute that requires a jury's resolution. Defendant seems to acknowledge this distinction in his Reply Suggestions, where he argues these communications caused the disruption. Reply Suggestions at 4. However, contrary to Defendant's argument the Record is not conclusive on this point. Moreover, there is evidence that Plaintiff's support of Brand had no effect on her job performance or the office's ability to function. As noted earlier, Chief Deputy Luce did not discipline her or suggest to Defendant that she be disciplined. And this assumes one credits Defendant's version of the facts: as noted there is evidence in the Record to suggest Plaintiff's support of Brand was not particularly disruptive to the workplace.

B.

The Court reaches a different conclusion regarding that aspect of Count I predicated on Plaintiff's statements to the MHP. The Court will accept for purposes of discussion that this speech was protected by the First Amendment, and there is no question that she was terminated. However, the uncontroverted facts provide no basis for a jury to find these statements were a substantial motivating factor in Defendant's decision to terminate her. There is no evidence in the Record establishing Defendant knew of these statements, and without such knowledge there is no basis for a jury to find these statements were a factor in his decision. Plaintiff attempts to establish the necessary link only by pointing to the fact that Trooper Jones' November visit occurred one day before she was terminated. This temporal proximity does not establish that Defendant knew Plaintiff talked to the MHP or what she related. Plaintiff's concession that Defendant knew of the investigation and that others who talked to the MHP were not terminated undercuts the value of this temporal proximity – and there is no other evidence to establish a relationship between her reports and her termination. There are

7

no facts from which a jury could conclude one had anything to do with the other, and Defendant is entitled to summary judgment on this aspect of Count I.

C.

In Part II.A, the Court concluded the Record contains facts that might cause a jury to find Plaintiff's rights were violated because she was fired for supporting Defendant's political opponent. The Court now considers Defendant's claim of qualified immunity. Qualified immunity protects state actors from liability for actions that do not violate clearly established rights that would have been known to a reasonable person in that situation. Defendant bears the burden of demonstrating the law was not clearly established. E.g., Schockency v. Ramsey County, 493 F.3d 941, 947-48 (8th Cir. 2007), cert denied, 552 U.S. 1143 (2008).

Defendant argues clearly established law does not establish an employee has First Amendment protection in the absence of actual speech. Plaintiff's Suggestions at 24. First of all, this is incorrect. See footnote 1, supra; see also Rutan, 497 U.S. at 75-76. As a general matter, "[i]t is well established that a government employer cannot take adverse employment actions against its employees *for exercising their First Amendment rights*," Shockency, 493 F.3d at 948 (emphasis added) – not just those First Amendment rights that involve speech. Second – and more importantly – Defendant presents an unfair characterization of the Record: there is abundant evidence demonstrating Plaintiff talked about her support of Brand. In fact, Defendant cites this very evidence to support his arguments under Pickering. Regardless, construing the Record in the light most favorable to Plaintiff demonstrates the factual predicate for Defendant's qualified immunity argument is absent. A jury could find Defendant knew of Plaintiff's support for his opponent, that Plaintiff made statements in support of his opponent, and that he fired her for this support (disloyalty) and for making these supporting statements. As Shcokeny makes clear, a governmental employee's right to engage in First Amendment activity without reprisal is well-established.

### D.

Defendant seeks dismissal of the claims against him in his official capacity. The suit against Defendant in his official capacity is treated as a suit against Barton County. E.g., Rynders, 650 F.3d at 1195. Plaintiff originally named Barton County as a defendant, but dismissed it. Having already dismissed Barton County, Plaintiff cannot continue her claim against Barton County.

### E.

Defendant seeks summary judgment on Plaintiff's claim for punitive damages sought against him in his official capacity. The request is granted for two reasons. First, summary judgment is being granted on Plaintiff's official-capacity claim. Second, even if summary judgment were not being granted the claim for punitive damages would be disallowed. Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

### III. CONCLUSION

For these reasons, summary judgment is granted with respect to (1) Counts II and III and (2) the aspect of Count I predicated on Plaintiff's statements to the Missouri Highway Patrol. Plaintiff's claims against Defendant Larry Shaw in his official capacity are really claims against Barton County, and Barton County has previously been dismissed. Summary judgment is denied with respect to that aspect of Count I predicated on Plaintiff's support and statements in favor of Defendant's political opponent.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 20, 2014    UNITED STATES DISTRICT COURT